IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOHN DIAZ,                          :
                                    :
        Plaintiff                   :
                                    :   CIVIL NO. 1:CV-07-2190
        vs.                         :
                                    :   (Judge Caldwell)
JOHN PALAKOVICH, *et al.*,          :
                                    :
        Defendants                  :



*M E M O R A N D U M*

I.    *Introduction*

        Plaintiff, John Diaz, an inmate at the Smithfield State
Correctional Institution (SCI-Smithfield), Huntingdon,
Pennsylvania, claims the defendants improperly handled his incoming
and outgoing legal mail.  Named as defendants are the following
SCI-Smithfield employees: John Palakovich, Superintendent; Lisa
Hollibaugh, Assistant to the Superintendent and Grievance
Coordinator; Peggy Everhart, Mailroom Supervisor; and Jane Doe I
and Jane Doe II, unidentified mailroom inspectors.[1]  Diaz seeks
injunctive relief as well as compensatory and punitive damages
against each of the defendants in their personal capacities.
Defendants have filed a motion for summary judgment on behalf of

_____

        [1]  On September 8, 2008, Diaz filed a Motion to Amend to substitute
the Doe defendants and name Staci Weaverling and Carolyn Weinfurther as
defendants.  *See* Doc. 30, Motion to Amend.  The motion was not briefed by
Diaz and will be denied for reasons explained in more detail below.

Palakovich, Hollibaugh and Everhart.  Upon review of the motion and the record, we will grant summary judgment in favor of the defendants, and all pending motions, including Diaz's Motion to Amend, will be denied.[2]

II.    Background

    A. Diaz's Allegations against Palakovich,
       Everhart, Hollibaugh and Does

        In his Complaint, Diaz claims that defendants "have been tampering with both his incoming and outgoing legal mail since 4-28-06." (Doc. 1, Complaint).  Diaz claims Everhart, Jane Doe I and Jane Doe II, have been "opening and reading [his] legal mail outside his presence." (Doc. 1 at R. 2).[3]  Plaintiff avers that Defendant Everhart "admitted" that Jane Doe I and Jane Doe II "tampered" with his legal mail and said it would not happen again. Yet, "the mailroom continued to open [his] legal mail outside of his presence." (Id.)  Hollibaugh had the power to stop the tampering with his legal mail but "refused to do so." (Id. at R. 3).  Superintendent Palakovich attempted to "cover up" the tampering and "even authorized the mailroom to open the plaintiff's

_____

    [2] Our review of the summary-judgment record indicates that Plaintiff's claim has no merit and on that basis we will deny his motion for appointment of counsel. See Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).

    [3]   "R." or "RR." references are to the CM/ECF pagination of the document cited.

legal mail outside of his presence." (*Id.*) "The tampering with [Diaz's] legal mail has caused a chilling effect in plaintiff's legal affairs because he fears retaliation if he does speak to attorneys about his conditions of confinement." (*Id.*)

### B. Statement of Material Facts[4]

The Pennsylvania Department of Corrections (DOC) has a three-level administrative remedy review process designed to address inmate problems that may arise during the course of confinement. (Doc. 25, Defendants' Statement of Material Facts (DSMF) at ¶ 8). 37 Pa. Code § 93.9(a); *see also* http://www.cor.state.pa.us, DOC Policies, DC-AM 804, *Inmate Grievance System Policy*. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the prison Grievance Coordinator for initial review. (*Id.* at ¶ 9). An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution. The third and final level of appeal is to the Secretary of the Department of Corrections Office of Inmate Grievances and Appeals. (*Id.* at ¶¶ 10-13).

Although Diaz submitted several grievances while housed at SCI-Smithfield, most were not appealed to Final Review. (Doc.

---

[4] Diaz did not file a counterstatement of material facts in response to the Defendants' Statement of Material Facts (doc. 25). *See* Local Rule 56.1 (requiring "a separate short and concise statement of material facts" responding to the numbered paragraphs in the moving party's statement of material facts). Failure to do so results in the admission of the moving party's material facts.

26-2, Exhibits in Support of Defendants' Motion for Summary
Judgment, Ex. A, Sears Decl. at ¶¶ 12 - 13).  Plaintiff filed only
two grievances regarding his legal mail that were properly appealed
to Final Review as required by DC-ADM 804 prior to initiating his
Complaint. (DSMF ¶ 14).  On July 23, 2007, Diaz filed grievance No.
SMI-194670-07, claiming that the attorneys to whom he sent legal
mail never received that mailing.  (DSMF ¶ 15; Doc. 26-4, Sears
Decl., Ex. C, SMI-194670-07 Grievance Packet).  Lt. Ferguson (non-
defendant) initially investigated the grievance, and subsequently
denied it on July 25, 2007.  (DSMF ¶ 17; Doc. 26-4, Ex. C at RR. 4-
5).  Diaz filed an appeal to the Grievance Coordinator Hollibaugh.
Superintendent Palakovich denied the appeal on July 30, 2007.
(DSMF ¶ 17; Doc. 26-4, Ex. C at RR. 7-8).  Diaz appealed the
decision to the Secretary's Office of Inmate Grievances and
Appeals.  Chief Grievance Officer, Kristen Reisinger (non-
defendant), upheld Superintendent Palakovich's decision.  (DSMF ¶
17; Doc. 26-4, Ex. C at RR. 2-3 and 6).  Diaz's grievance does not
identify any particular individual as being at fault for the
suspected mishandling of his outgoing legal mail.  (DSMF ¶  16).

On August 14, 2007, Diaz filed grievance No. SMI-197078-
07, alleging legal mail sent to him from the Eastern District of
Pennsylvania, Office of the Clerk, was opened outside of his
presence.  (DSMF ¶ 18; Doc. 26-5, Sears Decl., Ex. D, SMI-197078-07
Grievance Packet at R. 7).  Diaz claims he "filed several

-4-

grievances about [his] legal mail being opened and read outside of
his presence, and [his] mail being tampered with and destroyed."
(Doc. 26-5 at R. 7).  Diaz does not identify whom he thinks is
responsible for opening his court mail.  (*Id.*)  SCI-Smithfield's
Business Manager, Richard Moyer (non-defendant), conducted the
initial investigation into Diaz's grievance.  (DSMF ¶  20).  After
discussing the matter with the mailroom staff, Moyer admitted the
opening of Diaz's court mail "was a mistake on their part and they
have been informed this is an unacceptable practice," and that
"they will be more careful and avoid opening your legal mail
outside your presence."  (Doc. 26-5 at R. 8).  Monetary
compensation was denied.  (*Id.*)  Diaz appealed the decision to
Superintendent Palakovich (doc. 26-5 at R. 6), who denied the
appeal on August 27, 2007 (doc. 26-5 at R. 5).  Diaz then appealed
to the Secretary's Office of Inmate Grievances and Appeals (doc.
26-5 at R. 3).  The Chief Grievance Officer Kristen Reisinger found
in favor of Diaz but denied any monetary compensation as "there was
no evidence that [the opening of Diaz's legal mail outside of his
presence] was done intentionally or with malice."  (DSMF ¶  20;
Doc. 26-5 at R. 2).

        Mailroom Supervisor Everhart is responsible for
processing incoming and outgoing mail at SCI-Smithfield, and for
supervising mail inspectors to ensure that they perform their
duties in accordance with the Pennsylvania DOC's policy governing

-5-

mail, DC-ADM 803, *Inmate Mail and Incoming Publications*. (Doc. 26-6, Ex. E, Everhart Decl. at ¶¶ 2-3). Mail inspectors working under Everhart's supervision typically open all mail that is not marked as legal mail to inspect for contraband. (DSMF ¶ 21). Legal mail is opened in the presence of the inmate, and the mail is checked at the time for contraband. (*Id.*)

Everhart denies ever opening Diaz's legal mail outside of his presence. (DSMF ¶ 22; Doc. 26-6, Ex. E, Everhart Decl. at ¶ 5). Everhart, however, is aware of two occasions when Diaz's legal mail was opened outside of his presence. (DSMF ¶ 23). On those occasions, the legal mail was opened by a mail inspector who was new to the mailroom staff. (*Id.*) The mail inspector did not read Diaz's legal mail or open the contents of the mail. (*Id.*) The opening of Diaz's mail on both occasions was unintentional. (*Id.*) Everhart is unaware of any occasion when mail inspectors tampered with or destroyed Diaz's outgoing mail. (DSMF ¶ 24). Palakovich and Hollibaugh played no part in the processing of mail, and only reviewed the grievances filed and appealed by Diaz. (DSMF ¶ 25).

Plaintiff does not identify any legal matter that was obstructed or negatively impacted by the alleged conduct of defendants. (DSMF ¶ 7).

III.   *Standard of Review*

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral

argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201
(3d Cir. 2006).  The moving party has the burden of showing the
absence of a genuine issue of material fact, but the nonmoving
party must present affirmative evidence from which a jury might
return a verdict in the nonmoving party's favor. *Liberty Lobby*,
477 U.S. at 256-57, 106 S.Ct. at 2514.  "The non-moving party
cannot rest on mere pleadings or allegations," *El v. Southeastern
Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but
"must set forth specific facts showing that there is a genuine
issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 - 232
(3d Cir. 2001).  Allegations made without evidentiary support may
be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).
"Conclusory, self-serving affidavits are insufficient to withstand
a motion for summary judgment." *Blair v. Scott Specialty Gases*,
283 F.3d 595, 608 (3d Cir. 2002).  Hearsay testimony contained in
affidavits or statements that would be inadmissible at trial may
not be included in an affidavit to oppose summary judgment.
*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Comp.*, 998
F.2d 1224, 1234 n. 9 (3d Cir. 1993).  The non-moving party must
raise "more than a mere scintilla of evidence in its favor" in
order to overcome a summary judgment motion. *Williams v. Borough
of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

IV.   Discussion

A.   Personal Involvement of Named Defendants

Defendants seek dismissal of the complaint based on their lack of personal involvement in the conduct alleged to be a constitutional violation.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  *Rode*, 845 F.2d at 1207-08; *see Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  It is also well established that liability in a civil rights action cannot be predicated solely on the doctrine of respondeat superior. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*)(citing *Rode,* 845 F.2d at 1207).  "Supervisors may be held liable under § 1983 for constitutional violations of their subordinates if it is shown that they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  *Tsakonas v. Cicchi*, No. 07-4115, 2009 WL 500567 at *3 (3d Cir. Jan. 30, 2009)(internal citations and quotations omitted); *see also Sample v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1999)(supervisory liability may attach if

-9-

supervisor's actions or inactions were the "moving force" behind the harm suffered by the plaintiff). Thus, individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *Rode, supra*. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

The Third Circuit Court of Appeals requires a defendant's contemporaneous, personal knowledge and acquiescence, in order to establish personal knowledge. After the fact knowledge will not suffice. Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement. *See Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006)(nonprecedential)(holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); *see also Burnside v. Moser*, 138 Fed. Appx. 414, 416 (3d Cir. 2005)(failure of prison official to process administrative grievance did not amount to a

constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Defendants Palakovich and Hollibaugh are accused of failing to prevent the opening of Diaz's legal mail outside of his presence or to have "authorized the mailroom to open plaintiff's legal mail outside of his presence" by their responses to his various grievances. (Doc. 1, Complaint). Diaz alleges that these defendants were aware of his allegations via their involvement in responding to his inmate grievances related to his legal mail.[5] Diaz fails to offer any evidence that either Palakovich or Hollibaugh were personally involved in the alleged tampering with his legal mail. The record is clear that their involvement came after the alleged constitutional injury and thus neither Palakovich nor Hollibaugh can be held to be personally involved in the alleged unconstitutional events. *See Brooks, supra*, 167 Fed. Appx. at 925.

Likewise, Diaz has failed to rebut the sworn declaration of Palakovich who affirms that he "was not aware of a practice

---

[5]  Attached to his opposition brief, Diaz submits copies of various grievances and initial responses related to the handling of his legal mail to support his charges against Hollibaugh and Palakovich.  We note, however, that only the two grievances are the subject of this litigation as they are the only ones that were fully exhausted pursuant to the demands of DC-ADM 804.  The other grievances submitted by Diaz were not fully exhausted.  Regardless of their exhaustion status, the submitted grievance material do not establish Hollibaugh's or Palakovich's direct involvement or that they were a "moving force" behind the alleged improper handling of Diaz's legal mail.  Thus, we do not find the submitted grievance documents supportive of Diaz's allegations that Palakovich or Hollibaugh were personally involved in the alleged tampering with his outgoing or incoming legal mail, the incidents that are the subject of this action.  *See Rode*, 845 F.3d at 1208.

within the mailroom staff at SCI-Smithfield of intentionally opening legal mail outside the presence of inmates or otherwise tampering with or destroying inmate mail ... [and that he] never authorized or 'covered up' such conduct." (Doc. 26-7, Palakovich Decl. at ¶ 9). Similarly, Diaz offers nothing to contradict the documents of record, or Hollibaugh's declaration, that demonstrate her role in the alleged constitutional deprivation to be limited to her after-the-fact processing of his two institutional grievances, neither of which she investigated or drafted a response to. Hollibaugh's sworn statement that "[a]t no time did [she] participate in the opening of inmate Diaz's legal mail outside of his presence, nor did [she] knowingly allow others to do so" is uncontradicted. (Doc. 26-8, Hollibaugh Decl. at ¶ 10). As such, at the summary judgment stage, the conclusory allegations of the Complaint, without evidentiary support, may be disregarded. *See Jones, supra.* For the above reasons, the court will grant defendants Palakovich and Hollibaugh's motion for summary judgment on the basis of lack of personal involvement in the alleged constitutional interference with his legal mail.

As for defendant Everhart, aside from the assertion in the Complaint that she opened Diaz's legal mail, Diaz fails to produce any evidence to support his assertion that Everhart, Jane Doe I or Jane Doe II, intentionally opened and read his legal mail outside of his presence. (Doc. 1 at R. 2). Diaz does not provide

-12-

any evidence to rebut Everhart's sworn declaration that she never opened his legal mail outside of his presence.[6] (DSMF ¶  22; Doc. 26-6, Ex. E, Everhart Decl. at ¶ 5).  Although Everhart is aware of two occasions when Diaz's legal mail was accidentally opened outside of his presence by an inexperienced mail inspector, DSMF ¶ 23, this is insufficient to hold her liable for that conduct on the basis of respondeat superior.  The doctrine of respondeat superior does not apply to constitutional claims.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of respondeat superior)(citing *Rode,* 845 F.2d at 1207).  Thus, Everhart is entitled to judgment in her favor as to Diaz's claim that she opened his legal mail outside of his presence.

> B. *Diaz's Motion to Amend will be Denied as Futile as he Fails to State a Claim for Which Relief Can Be Granted.*
>
> 1.   *Procedural Irregularities Precluding Diaz's Motion to Amend.*

Diaz filed the present Complaint on December 3, 2007. Defendants answered the Complaint on March 27, 2008.  On April 22, 2008, the Court issued a scheduling order calling for the close of discovery on or before June 23, 2008, and the filing of dispositive

---

[6]  Contradicting statements asserted in his own Complaint, in his opposition brief Diaz asserts that Staci Weaverling and Carolyn Weinfurther are "the actual individuals who opened Plaintiff's legal mail."  (Doc. 31 at R. 2). Yet, Diaz offers no evidence to support this conclusory assertion either.

motions on or before July 21, 2008.  (Doc. 18, Scheduling Order).
It was not until September 8, 2008, after defendants had filed and
briefed their motion for summary judgment, that Diaz filed a
"Motion to Amend."  (Doc. 30).  Diaz's motion simply notes his
request to substitute Jane Doe I and Jane Doe II as Staci
Weaverling and Carolyn Weinfurther as they were the individuals who
actually opened his legal mail.  (*Id.*)  Initially, we note that
Diaz failed to file the requisite brief in support of his Motion to
Amend, and therefore, for this reason alone the motion may be
deemed withdrawn.  *See* M.D. Pa. Local Rule 7.5.  However, there are
additional reasons for denying Diaz's Motion to Amend.

          Fictitious names may be used until reasonable discovery
permits the actual defendants to assume their places, but John and
Jane Doe defendants must eventually be dismissed if discovery
yields no identities.  *See Parker v. United States*, 197 Fed. Appx.
171, 173 n. 1 (3d Cir. 2006); *Aponte v. Karnes*, 2008 WL 360879, at
*1 n. 1 (M.D. Pa. Feb.8, 2008); *Smith v. Lucas*, 2007 WL 1575231, at
*8 (M.D. Pa. May 31, 2007).  Fed. R. Civ. P. 4(m) allows the court
to dismiss a party which has not been served within 120 days of
filing the complaint.  Furthermore, Rule 21 of the Federal Rules of
Civil Procedure allows this Court to drop parties on "its own
initiative at any stage of the action and on such terms as are
just." *See* Fed. R. Civ. P. 21. As Diaz did not file a supporting
brief, the Court does not know how he ascertained these individuals

-14-

were responsible for the opening of his legal mail.  Without any
supporting brief to trigger defendants' obligation to respond or
challenge Diaz's assertion, the Court is left only with conclusory
allegations as to their involvement at a very late stage of this
litigation.  Accordingly, as the fictitious defendants were not
identified within 120 days of the filing of the Complaint, and
would be prejudiced by their late inclusion in the matter when
discovery has already closed, the Court may deny Diaz's Motion to
Amend on the basis of his non-compliance with Fed. R. Civ. P.
4(m).[7]

        Regardless of these events, we are mindful that pro se
litigants are to be granted leave to file a curative amended
complaint "even when a plaintiff does not seek leave to amend,"
unless such an amendment would be inequitable or futile.  *Alston v.
Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  However, a complaint
that sets forth facts which affirmatively demonstrate that the
plaintiff has no right to recover is properly dismissed without
leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d 103,
106 (3d Cir. 2002).  Diaz's motion to amend came after the close of
discovery, and after defendants filed their motion for summary
judgment.  Amendment of the Complaint at such a late date would be
prejudicial to defendants.  Additionally, for the reasons that

_____

        [7]  In order to comply with Rule 4(m), Diaz should have
substituted the identities of the fictitious defendants on or
before April 1, 2008.

follow, Diaz's Motion to Amend will be futile as it fails to state a claim for which relief can be granted.

    2.   *Failure to State a Claim*.

    Assuming for the sake of argument that Diaz could demonstrate good cause for his untimely amendment, and the substitution of parties was permitted, he nonetheless fails to state a claim upon which relief can be granted. Diaz claims Staci Weaverling and Carolyn Weinfurther opened his legal mail outside of his presence thereby violating his constitutional rights to access the courts and free speech. Neither claim is supported by the record.

    Prisoners have a right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Importantly, however, where an inmate does not allege actual injury to his ability to litigate a claim, his constitutional right to access the courts has not been violated. *See id*, 518 U.S. at 351-53, 1165 S.Ct. at 2180-81. An actual injury is shown only where a nonfrivolous claim, or one of arguable merit, is lost. *See Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 2187, 153. L.Ed.2d 413 (2003). In this situation, although Diaz claims that on one occasion his outgoing legal mail did not reach its intended destination, and that on one occasion his legal mail was opened outside of his presence, he does not identify any legal matter that was obstructed or negatively

-16-

impacted by the alleged conduct of any defendant.  (DSMF ¶  7).

Accordingly, Diaz has failed to state a claim for the denial of

access to the courts.  Amendment of the Complaint at this

procedural point in time to substitute the identities of the two

fictitious defendants for the purpose of alleging such a claim

against them would be futile.[8]

---

[8]   We further note that no specific individuals were identified by
Diaz as being involved in the alleged interference with Diaz's outgoing
legal mail set forth in grievance No. SMI-194670-07. As such, Diaz failed
to properly exhaust his claims against the defendants with respect to
claims arising out of this grievance.  The Supreme Court held in *Jones v.
Bock*, 549 U.S. 199, 217, 127 S.Ct. 910, 922, 166 L.Ed.2d 798 (2007), that
exhaustion is not *per se* inadequate simply because an individual later
sued is not named in the prison grievance.  However, *Jones* does not
excuse prisoners from identifying the individuals responsible for the
alleged wrongdoing in their grievance *unless* their identification is not
required by the applicable prison grievance procedure.  *Id.*, 549 U.S. at
217-18, 127 S.Ct. at 922-23.  "The level of detail necessary in a
grievance to comply with the grievance procedures will vary from system
to system and claim to claim, but it is the prison's requirements, and
not the [Prison Litigation Reform Act], that define the boundaries of
proper exhaustion."  *Id.*  As held in *Spruill v. Gillis*, 372 F.3d 218 (3d
Cir. 2004), it is the "prison grievance procedures [that] supply the
yardstick" for determining what steps are required for "proper
exhaustion".  *Spruill*, 372 F.3d at 231.  In *Spruill*, the Third Circuit
Court of Appeals examined the procedural requirements of the Pennsylvania
Department of Corrections' grievance system with respect to the naming of
future defendants within the contents of the initial inmate grievance.
The Court held that to the extent that the identity of a defendant is a
"fact relevant to the claim," the grievance policy requires the
individual's identification be included in the inmate's statement of the
facts on the grievance form.  *Id.*, 372 F.3d at 234.  Under, DC-ADM 804,
VI. A. 1. 7, the grievance policy requires that an "inmate will include a
statement of the facts relevant to the claim, ... the inmate *will*
identify any person(s) who may have information that could be helpful in
resolving the grievance."  (Doc. 26-3, Ex. B at RR. 5-6).  "The purpose
of the regulation here is to put the prison officials on notice of the
persons claimed to be guilty of wrongdoing.  As such, the prison can
excuse an inmate's failure to do so by identifying the unidentified
persons and acknowledging that they were fairly within the compass of the
prisoner's grievance."  *Spruill*, 372 F.3d at 234.  Here, Diaz was
required to identify "persons who may have information that could be
helpful in resolving the grievance" unless prison officials responding to
(continued...)

Next, we examine Diaz's claim that the opening of his legal mail outside of his presence impermissibly burdened his First Amendment rights. It is well established that prisoner legal mail may not be opened for inspections for contraband except in the presence of the prisoner.[9] *Wolff v. McDonnell*, 418 U.S. 539, 576-77, 94 S.Ct. 2963, 2984-85, 41 L.Ed.2d 935 (1974). Likewise, it is it is undisputed that Pennsylvania state prisoners have a First Amendment right not to have properly marked legal mail opened outside of their presence. *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir. 1995); *Jones v. Brown*, 461 F.3d 353, 355 (3d Cir. 2006); *See Fontroy,* 2009 WL 593844 at *3. A "pattern and practice of opening properly marked incoming legal mail outside of an inmate's presence infringes communications protected by the right to free speech ... because it chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." *Jones*, 461 F.3d at 358 - 59;

---

[8](...continued)
the grievance acknowledged and identified those that were related to Diaz's grievance. It is undisputed that Diaz failed to specifically name any particular individual as being responsible for the improper handling of his outgoing and incoming legal mail. Furthermore, no specific individuals were identified by prison officials as being involved in the alleged interference with Diaz's outgoing legal mail, grievance No. SMI-194670-07. In the absence of any justifiable excuse, Diaz's failure to properly identify a defendant in this grievance constitutes a failure to properly exhaust administrative remedies.

[9] The Third Circuit recently "use[d] the term 'legal mail' to refer to incoming attorney and court mail, collectively," so this Court will do the same. *See Fontroy v. Beard*, No. 07-2446, 2009 WL 593844, n.1 (3d Cir. March 10, 2009).

-18-

*see also Bieregu*, 59 F.3d at 1452.   Unlike an inmate's right to court access case, in cases where a prisoner's legal mail is opened repeatedly outside of his presence, the Third Circuit Court of Appeals has held there is no "actual injury" requirement to assert a claim.  *Bieregu*, 59 F.3d at 1455.   At the same time, the Third Circuit Court of Appeals was

> careful to distinguish between a single,
> inadvertent opening of properly marked legal
> mail outside an inmate's presence and a pattern
> or practice of such actions.   The former may
> not infringe a prisoner's right to free speech,
> nor his right to court access absent a showing
> of actual injury.   The latter, however, both
> infringes those rights and fails *Turner*.

*Id.*, 59 F.3d at 1458.

We must be clear that Diaz is not challenging the Pennsylvania DOC's policy for the handling of legal mail but rather aberrations from this policy where his legal mail was opened outside of his presence contrary to DOC policy.   The record before the Court reveals the following:   Diaz properly exhausted one claim concerning the improper opening of legal mail outside of his presence (No. SMI-197078-07)(DSMF ¶ 18); within the DOC legal mail is opened in the presence of the inmate and checked for contraband (DSMF ¶ 21); Everhart is aware of two occasions when plaintiff's legal mail was unintentionally opened outside of his presence by a new mail inspector (DSMF ¶ 23); Everhart affirms the erring mail inspector did not read plaintiff's mail or open the contents of the mail (*Id.*).   Diaz has not presented any evidence to contradict

-19-

these undisputed facts.  Diaz acknowledged he was advised, with regard to grievance no. SMI-197978-07 that the piece of legal mail was opened by mistake and that mailroom staff was counseled regarding the matter.  Diaz has failed to submit any evidence to support his conclusory assertions that either Weaverling and/or Weinfurther had a pattern or practice of opening his legal mail outside of his presence, or that they read his legal mail, or that the opening of his legal mail was more than a mistake or done with intention or malice.  Assuming for the sake of argument that there were two occasions where Weaverling and/or Weinfurther accidentally opened Diaz's legal mail outside of his presence, such a claim does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment constitutional violation.  As other courts have held, an isolated incident of opening of legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation.  *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)(accidental opening of one piece of constitutionally protected legal mail did not give rise to a constitutional claim); *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997)(holding that isolated, inadvertent instances of legal mail being opened outside of an inmate's presence are not actionable); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)(isolated inadvertent incidents of opening

-20-

inmate's legal mail do not state a constitutional claim); *Bryant v. Winston*, 750 F. Supp. 733, 734 (E.D. Va. 1990)(holding that an isolated incident of mail mishandling, which is not part of any pattern or practice, is not actionable under § 1983); *Beese v. Liebe*, 51 Fed. Appx. 979, 981 (7th Cir. 2002)(dismissal of First Amendment claim that four pieces of legal mail opened outside of inmate's presence did not rise to the level of a constitutional violation upheld where inmate presented no evidence that his mail was not intentionally opened).

*V.   Conclusion*

        For the reasons expressed above, defendants are entitled to summary judgment in their favor on all of Diaz's claims against them, and Diaz's Motion to Amend will be denied.  Diaz's pending motions for preliminary injunction will be denied as moot.

        We will issue an appropriate order.


                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge


Date: March 26, 2009

-21-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
JOHN DIAZ,                        :
                                  :
        Plaintiff                 :
                                  :    CIVIL NO. 1:CV-07-2190
        vs.                       :
                                  :    (Judge Caldwell)
JOHN PALAKOVICH, et al.,          :
                                  :
        Defendants                :
```

*O R D E R*

        AND NOW, this 26th day of March, 2009, in accordance with
the accompanying Memorandum, it is ordered that:

    1.    Defendants' motion for summary judgment (doc.
          23) is granted.

    2.    The Clerk of Court is directed to enter
          judgment in favor of Defendants Palakovich,
          Everhart and Hollibaugh and against Plaintiff
          Diaz.

    3.    Diaz's Motion to Amend/Correct the Complaint
          (doc. 30) is denied.

    4.    Diaz's Motions for Preliminary Injunction
          (docs. 34 and 36) are denied as moot.

    5.    Diaz's Motion to Subpoena Witnesses (doc. 40)
          is denied as moot.

    6.    Having resolved the merit of Plaintiff's
          claims, his Motion for Appointment of Counsel
          (doc. 42) is denied.

    7.    The Clerk is directed to close this case.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge